Johnny McCOY, Plaintiff,

v.

Glenn S. GOORD, Commissioner,
Department of Corrections,
et al., Defendants.

No. 01 Civ. 3133(DC).

United States District Court,
S.D. New York.

March 25, 2003.

Johnny McCoy, Boydton, VA, Pro se, Plaintiff.

Eliot Spitzer, Esq., Attorney General of the State of New York by Lisa E. Fleischmann, Esq., Assistant Attorney General, New York City, for Defendants.

### OPINION

CHIN, District Judge.

Johnny McCoy brings this pro se § 1983 civil rights action against twenty-six officials and employees of the New York State Department of Correctional Services ("DOCS"). McCoy alleges numerous violations of his constitutional rights, including threats, beatings, and the denial of proper medical care, while incarcerated at Sing Sing Correctional Facility ("Sing Sing"). Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995 (the "PLRA") and, as to certain defendants, pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.

McCoy's 122–paragraph complaint asserts claims based on nine incidents. On its face, the complaint alleges that McCoy filed grievances with respect to some but not all of the incidents, and the complaint does not report the results of the grievance proceedings, other than to allege that the grievance personnel did "Nothing!" Materials extrinsic to the complaint indicate that McCoy filed as many as nine grievances, although some of the grievances were based on the same incident. Defendants have also submitted an affidavit stating that a search of DOCS records reveals that McCoy did not appeal with respect to any grievance.

A host of questions are presented by the exhaustion issue: Is the exhaustion requirement jurisdictional? Or is failure to exhaust an affirmative defense? Must exhaustion be pleaded in the complaint? Is a motion to dismiss for failure to exhaust addressed solely to the complaint? Or may extrinsic materials be considered? May unexhausted claims be considered on the merits? If the statute of limitations is an issue, is it tolled while the plaintiff is exhausting unexhausted claims? What happens if, as a practical matter, plaintiff cannot exhaust before the statute of limitations expires? Can procedural errors, such as missed administrative deadlines that render future exhaustion impossible, effectively bar an inmate from a federal court remedy?

As this case demonstrates, the PLRA's "enigmatic" exhaustion requirement,[1] intended to reduce the perceived burdensome flow of prisoner litigation, has had the "perverse effect[ ]" of generating extensive litigation.[2] Indeed, the law on the narrow subject of the PLRA's exhaustion requirements continues to evolve month by month.

For the reasons that follow, defendants' motion is granted and the complaint is dismissed. Although plaintiff's failure to fully exhaust is not plain from the face of the complaint, because he has been given notice and an opportunity to be heard, I treat this motion as a summary judgment

---

1. *See, e.g.,* Lynn S. Branham, *The Prison Litigation Reform Act's Enigmatic Exhaustion Requirement: What It Means and What Congress, Courts and Correctional Officials Can Learn From It,* 86 Cornell L.Rev. 483, 543 n. 259 (2001); Robert L. Tsai, *Conceptualizing Constitutional Litigation as Anti-government Expression: A Speech–Centered Theory of Court Access,* 51 Am. U.L.Rev. 835, 904 nn. 279–80 (2002) (observing that constitutional challenges to the PLRA have been unsuccessful and noting that "[t]he PLRA substantially altered the landscape for bringing prisoner's rights cases by requiring inmates to exhaust available administrative remedies").

2. *Rodriguez v. Ghoslaw,* No. 98 Civ. 4658(GEL), 2002 WL 1424586, at *1 (S.D.N.Y. June 28, 2002).

motion and consider extrinsic materials submitted by both sides. Based on these materials, I conclude that plaintiff has not fully exhausted any of his claims. Next, as mandated by the PLRA, I consider whether McCoy's complaint states a claim upon which relief may be granted. I find that, with two exceptions, it does not. I conclude the complaint sufficiently pleads only two claims of excessive force. Although it appears that the statute of limitations will expire with respect to those claims shortly, the Court does not have the power to stay the action until McCoy can exhaust. Rather, it appears that dismissal is the only option, even though, as a practical matter, McCoy is not likely to be able to exhaust before the statute of limitations expires. Accordingly, the excessive force claims are dismissed without prejudice; the remainder of the complaint is dismissed with prejudice.

## BACKGROUND

### I. The Facts

The facts as summarized below are drawn from the complaint. For purposes of this motion, I assume the allegations are true.

#### A. The Parties

Although McCoy is now incarcerated in Virginia, all events relevant to the complaint took place at Sing Sing from December 1996 through July 1998. On July 10, 1998, McCoy was transferred from Sing Sing to Southport Correctional Facility ("Southport").

McCoy names twenty-six defendants in the caption of his complaint. During McCoy's incarceration, defendants Moo-Young, Bedford, Cruz, Ramirez, Viviano, Gilchrist, Evans, Rios, and Paroline were employed as corrections officers by DOCS, assigned to Sing Sing.[3] Defendant Murray was also employed by DOCS and was assigned to Sing Sing as a sergeant at that time. Defendants O'Brien, Aitcherson, Rivera, and DelSantos worked in Sing Sing Mental Health Services, while defendants Gross, Halko, and Figueroa were members of Sing Sing's medical staff. Defendants Goord and Greiner are the Commissioner of DOCS and Superintendent of Sing Sing, respectively. Also named as defendants are the Sing Sing Mental Health Staff, Sing Sing Medical Staff, and various John and Jane Does.

### B. The Incidents

While imprisoned at Sing Sing, McCoy maintains that he was assaulted twice, verbally harassed, denied medical and mental health treatment, and subjected to fabricated disciplinary reports. McCoy claims these acts were part of a conspiracy of retaliation for a lawsuit, still pending in Bronx County, stemming from an April 1996 assault by officers at Rikers Island during a previous term of incarceration. (Compl. ¶ I–B).

#### 1. Denial of Mental Health Treatment

On January 22, 1997, McCoy sought counseling from Sing Sing Mental Health Services. His psychologist, defendant O'Brien, displayed an immediate prejudice against him, accusing him of being "highly litigious" and failing to help him "ascertain peace within the depressive state that dominated his inner soul." (Compl. ¶¶ 5–6, 8, 12). McCoy had another session with O'Brien on March 18, 1997. (Compl. ¶ 23). Later, upon gaining access to his mental health records in October 1998 after he was transferred to Southport, McCoy learned that O'Brien had noted during that session, "[h]e appears to be rationalizing Mental Health Services in a manipulative

---

**3.** I use the spelling of defendants' names as set forth in their motion papers.

fashion for possible future litigation and/or immediate gratification." (Compl.¶¶ 24, 116).

At his request, McCoy began seeing a new psychologist, defendant Aitcherson, on September 25, 1997. While initially helpful, Aitcherson later "biasly analyzed [McCoy's] disposition and character as being one of aggression." (Compl.¶¶ 48–49, 52). During four other sessions between November 1997 and February 1998, McCoy tried to "express the displacency [sic] he was housed with," but Aitcherson disregarded his complaints, writing in his file that McCoy was a "psycho." (Compl.¶¶ 59–62, 115).

On August 14, 1997, after passing out and complaining of amnesia, McCoy was interviewed by defendant Rivera. Rivera, "neglecting the seriousness of [his] amnesia," sent McCoy back to his cell, where he "could have been subjected to any type [of] physical abuse and/or death ... in that precarious state of being." (Compl.¶¶ 41–43). Rivera also noted that McCoy appeared to be feigning amnesia. (Compl.¶ 42).

### 2. *January 23, 1998 Use of Excessive Force*

On the morning of January 23, 1998, McCoy was in a stairwell waiting to be pat-frisked by Officer Moo–Young before proceeding to the yard for recreation period. Sgt. Murray was assigned to supervise the pat-frisk and recreation period. Officers Cruz, Bedford, and Ramirez were also present. Moo–Young asked McCoy to lay his hands flat on the wall for the pat-frisk and immediately pushed the base of McCoy's back, pressing him against the wall. He then grabbed McCoy's feet to pull him off the wall. McCoy would have fallen to the floor if he had not grabbed onto the "boiling pipes" above him. (Compl.¶¶ 83–85). Cruz and Bedford tried to get McCoy off the pipes by punching him in the head and upper body while he hung for about ten minutes, "four feet off the ground in a horizontal position." (Compl.¶¶ 86–88). Murray did nothing to stop the officers, but instead "aided and abetted" them by hiding around the corner. (Compl.¶¶ 78, 109). Finally, several sergeants arrived at the scene and handcuffed McCoy. (Compl.¶¶ 92–95).

McCoy was later treated in the emergency room for various injuries, including second-degree burns to his right tricep resulting from his contact with the boiling pipes. (Compl.¶¶ 100–01). The defendants involved in this incident then filed an assault on staff charge against McCoy. In February 1998, the charge was dismissed. (Compl.¶ 99).

### 3. *March 12, 1998 Verbal Harassment*

McCoy alleges that on March 12, 1998, Murray "threat[ened] to assault" him, telling him that "it was not over, and that [he] and his correctional officers were going to hospitaliz[e][him]." (McCoy Letter of 6/20/02, at 2). That same day, McCoy filed a grievance regarding this incident. (*Id.*).

### 4. *March 17, 1998 Use of Excessive Force*

On March 17, 1998, McCoy was on his way to his housing block after recreation period when Officers Viviano, Gilchrist, Paroline, and Evans jumped him. In front of other inmates and staff, the officers forced him to the ground, handcuffed him, and led him to the commissary. After clearing the area of any witnesses, the officers threw McCoy face down on the floor and beat him until he resembled "the elephant man." (Compl.¶ 17). As a result, McCoy sustained injuries to his right thigh and "tremendous facial trauma." (Compl.¶ IV–A). Officer Rios was assigned to the commissary post at that

time, but was not involved in the assault. (Compl.¶ 117).

Following this incident, McCoy was charged with several disciplinary infractions, including assault on staff, violation of a direct order, interference with an employee, and verbal harassment or gesture. On April 2, 1998, McCoy was found guilty of all charges. (Pl.'s Art. 78 Pet. at 3). McCoy subsequently filed an Article 78 petition to expunge the charges from his record. (Compl.¶ 118).

### 5. *Interference with Access to the Court*

Viviano, Gilchrist, Paroline, and Evans then "[sought] out to hold [his] [Article 78] appeal for 30 days before permitting it to go out," knowing that there was a thirty-day statutory period of limitations for challenging the disciplinary hearing judgment. (Compl.¶ 120). McCoy never received a certified mail return receipt for this mailing and filed a grievance regarding the matter. (*Id.*).

### 6. *Special Housing Unit Conditions of Confinement*

Following the March 17, 1998 incident, McCoy was transferred to the Special Housing Unit ("SHU"), where he was subjected to "cruel and unusual punishment ... by the prison officials at Sing Sing." (Compl.¶ 118). He contends that he was not allowed to shower for more than two weeks and when permitted to do so, he was forced to wear metal leg shackles "like some untamed animal." (*Id.*). McCoy also claims that his SHU cell was infested with roaches, that he was served cold food, and that he was not given shaving razors. Because of these conditions, McCoy filed a number of grievance reports. (Compl. ¶ 119).

### 7. *Denial of Adequate Medical Treatment*

On three occasions, McCoy alleges that Figueroa, a nurse in the emergency room, failed to provide adequate medical treatment. On August 14, 1997, McCoy claims that Figueroa "just went through the motions" as he "[lay] helpless in the bed ... suffering from amnesia." (Compl.¶¶ 30–33, 39–40). On September 26, 1997, Figueroa refused to see McCoy, informing him that inmates with chronic pains were required to first submit a sick-call slip to be seen by a nurse. In response, McCoy punched the window of the emergency room door. This conduct, which McCoy admits, led to an infraction that was substantiated after a hearing on October 11, 1997. (Compl.¶ 37). On May 28, 1998, McCoy waited twenty-five minutes in the emergency room, only to have Figueroa send him back to his cell without treating his chest pains. (Compl.¶¶ 32–34, 39). According to McCoy, Figueroa had a "grave vendetta" against him, stemming from his prior incarceration at Sing Sing in 1993 and 1994. (Compl.¶ 30).

McCoy also claims that "medical staff acted in collusion with ... correctional officials" to lift his medical hold, resulting in his transfer to Southport on July 10, 1998. Consequently, McCoy missed two outside hospital appointments. (Compl.¶ 121). McCoy was taken to outside hospitals for treatment on at least three other dates. Despite these hospital visits, McCoy maintains that his medical conditions worsened. These included post-traumatic stress syndrome, post-traumatic tension migraine headaches, nightmares, insomnia, and cervical spine disc damage, all of which resulted from the alleged assault at Rikers Island. In addition, McCoy suffered from a history of loss of consciousness, high blood pressure, and

"head, back and undescended testicle injuries." (Compl.¶¶ IV–A, 20, 23, 57).

### 8. *Failure to Supervise*

Finally, McCoy claims that Commissioner Goord and Superintendent Greiner failed to ensure that "no prisoner within [DOCS] custody and control be subjected to unjustifiable and unwarranted physical force," and also failed to discipline defendants who violated his constitutional rights.

### C. *Administrative Proceedings*

### 1. *The Complaint*

McCoy drafted his complaint on a form provided by the court to prisoners filing a § 1983 complaint. The form asks, "Did you present the facts relating to your complaint in the state prisoner grievance procedure?" and, "What was the result?" McCoy checked the box for "yes" in response to the first question and wrote "Nothing! The grievance personel [sic] . . . has accepted on 'face value' the allegations from the very one's [sic] I've put in the grievances against!" in answer to the second. (Compl.¶ IIB–C).

In the body of his complaint, McCoy asserts that he filed four grievances, giving grievance numbers, but these appear to be based on just three incidents: the interference with access to the courts, the housing conditions in the SHU, and the denial of medical treatment. (Compl.¶¶ 119, 120).

### 2. *McCoy's Opposition*

In a letter to the Court dated June 20, 2002, McCoy identifies two additional grievances (providing grievance numbers) he filed concerning the January 23, 1998 use of force and the threat made to him by Murray on March 12, 1998, and he reiterated what he had said in his complaint with respect to other grievances. He represented that he had filed additional grievances as well but stated that he was at-

tempting to obtain copies from his mother, who was retaining his legal papers. (McCoy Letter of 6/20/02, at 2). He invited the court, if it could not wait for him to find the material, to "seek[ ] a copy of the grievances I filed, from Sing Sing's grievance department, or the Supreme Court" (*id.*) where they were attached as supporting exhibits to his Article 78 proceeding.

### 3. *Other Extrinsic Materials*

Although McCoy did not file a grievance in connection with the March 17, 1998 excessive force incident that followed the threat on March 12, he did file an Article 78 petition and he has submitted a number of documents related to that case. In these documents, McCoy refers to other grievances by number. (*See, e.g.,* App. to Art. 78 Pet.).

Defendants submitted a declaration in support of their motion to dismiss from Thomas G. Eagen, Director of the DOCS Inmate Grievance Program ("IGP"). Eagen stated that a search of Central Office Review Committee ("CORC") files found no "records or indication" that McCoy filed an appeal of any grievances at Sing Sing. (Eagen Decl. ¶ 5).

## II. *Prior Proceedings*

McCoy brought this action by submitting his pro se complaint dated and postmarked January 20, 2001, and received by the Court's Pro Se Office on January 24, 2001. He was granted in forma pauperis status and the complaint was filed on April 13, 2001.

On March 1, 2002, defendants moved to dismiss the complaint. Plaintiff submitted opposition papers on two dates, June 6 and June 24, 2002, together with certain documents as exhibits. As with his complaint, McCoy appended language affirming that "the foregoing is true and exact" at the foot of each submission, although his sig-

nature was not notarized. The motion seeks to dismiss McCoy's claims against all named defendants, including those who have not been served with the complaint.

Broadly construed, the complaint alleges that various defendants (1) conspired to and did retaliate against McCoy for filing an unrelated lawsuit against the City of New York; (2) exhibited deliberate indifference to his medical and mental health needs; (3) subjected him to "cruel and unusual" conditions of confinement; (4) violated his right of access to the court by interfering with legal mail; (5) verbally harassed him; and (6) used excessive force against him on two occasions. Lastly, McCoy asserts (7) a claim of supervisory liability against defendants Goord and Greiner.

## DISCUSSION

### I. *Applicable Law*

#### A. *Section 1983*

▮▮▮▮ To state a claim under § 1983, a plaintiff must show that defendants, while acting "under color of state law," deprived plaintiff of his constitutional or statutory rights. *Shabazz v. Vacco*, No. 97 Civ. 3761(DC), 1998 WL 901737, at *2 (S.D.N.Y. Dec. 28, 1998) (citing *Pitchell v. Callan*, 13 F.3d 545, 547–48 (2d Cir.1994)); *see* 42 U.S.C. § 1983. To withstand a motion to dismiss, a § 1983 complaint must set forth specific factual allegations indicating a deprivation of constitutional rights. *Shabazz*, 1998 WL 901737, at *2; *see Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987) ("[B]road, simple, and conclusory statements are insufficient to state a claim under § 1983."). Pro se complaints are to be liberally construed; I must interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citation omitted).

▮▮▮ To state a claim for damages under § 1983, a plaintiff must allege specific facts to demonstrate that the defendants were personally or directly involved in the violation, that is, that there was "personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir.2001). The personal involvement requirement may be satisfied by showing the defendant (i) personally participated in the violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference by failing to act on information indicating the unconstitutional acts were occurring. *Id.* at 154.

### B. *Procedural Requirements*

#### 1. *Individual Capacity*

▮▮ Under the Eleventh Amendment, state employees in their official capacities are not amenable to suit for money damages. *Cruz v. Gomez*, 202 F.3d 593, 595 n. 2 (2d Cir.2000). State employees in their individual capacities, however, may be liable for damages under § 1983, even when the conduct in question is related to their official duties. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (citation omitted).

#### 2. *Administrative Exhaustion*

The PLRA requires an inmate to exhaust all available administrative remedies before filing suit in federal court. Specifically, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

### a. When Is Exhaustion Required?

As the Supreme Court ruled last year, the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

### b. What Constitutes Exhaustion?

■ It is well established that to exhaust—literally, to draw out, to use up completely, *see* Oxford English Dictionary (2d ed.1989)—"a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review" before filing suit. *Porter v. Goord*, No. 01 Civ. 8996(NRB), 2002 WL 1402000, at *1 (S.D.N.Y. June 28, 2002) (citing *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir.2001) ("[G]rievances must now be fully pursued prior to filing a complaint in federal court."), and *Fletcher v. Haase*, No. 99 Civ. 9549(GEL), 2002 WL 313799, at *1 (S.D.N.Y. Feb. 27, 2002) ("This lawsuit . . . therefore, can only proceed after [plaintiff] has exhausted any available administrative remedies, including all appellate remedies provided within the system.")); *see also Booth*, 532 U.S. at 735, 121 S.Ct. 1819 (noting Booth, who conceded nonexhuastion below, "did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief"); *Gibson v. Goord*, 280 F.3d 221, 223 (2d Cir.2002) (noting plaintiff "had not pursued the available remedy of filing a 'level two grievance' "). "Complete exhaustion" is therefore required. *Graham v. Cochran*, No. 96 Civ. 6166(LTS)(RLE), 2002 WL 31132874, at *1, 6 (S.D.N.Y.2002) (noting "action must be dismissed because [plaintiff] unreasonably failed to appeal").

■ The standard is not one of fair notice to the defendants, or of substantial compliance. As a number of courts have detailed, prisoners in DOCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies. *See, e.g., Baskerville v. Blot*, 224 F.Supp.2d 723, 729 (S.D.N.Y.2002); *Cruz v. Jordan*, 80 F.Supp.2d 109, 117–18 (S.D.N.Y.1999); N.Y. Correct. Law § 139; N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7. The grievance system is available for any number of complaints, as "New York permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Flanagan v. Maly*, No. 99 Civ. 12336(GEL), 2002 WL 122921, at *1. (S.D.N.Y. Jan. 29, 2002) (citations omitted).

■ Appeal of a disciplinary hearing decision brought against the inmate does not accomplish exhaustion, even if the federal complaint and the disciplinary action share the same operative facts. *See Khalid v. Reda*, No. 00 Civ. 7691(LAK)(GWG), 2002 WL 31014827, at *4 (S.D.N.Y. Sept. 10, 2002) (citations omitted). In fact, "[s]trict compliance" with the grievance procedure is required, *Hemphill v. New York*, 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), or else dismissal must follow "inexorably." *Mendoza v. Goord*, No. 00 Civ. 0146(GEL), 2002 WL 31654855, at *1 (S.D.N.Y. Nov. 21, 2002); *see also Rhames v. Fed. Bureau of Prisons*, No. 00 Civ. 4338(AKH), 2002 WL 1268005, at *5 (S.D.N.Y. June 6, 2002) (noting the importance of strict compliance "to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures" but noting the risk that those procedures become "a snare of forfeiture for a prisoner seeking redress" (citations omitted)).

### c. *Is Exhaustion Jurisdictional?*

Defendants move to dismiss for lack of subject matter jurisdiction, arguing that the PLRA's exhaustion requirement is jurisdictional. In fact, a number of courts in the district have assumed that exhaustion is jurisdictional or treated it as such. *See, e.g., Harris v. Totten,* 244 F.Supp.2d 229, 231 (S.D.N.Y.2003) (noting that exhaustion raises "challenge to the court's jurisdiction"); *Paulino v. Amicucci,* No. 02 Civ. 208(LAP), 2003 WL 174303, at *2 (S.D.N.Y. Jan. 27, 2003) (same); *Benitez v. Straley,* No. 01 Civ. 0181(RCC)(RLE), 2002 WL 31093608, at *2 (S.D.N.Y.Sept. 8, 2002) (adopting magistrate's report but modifying reasoning to apply Rule 12(b)(1) standard to determine "challenge to the court's jurisdiction" instead of Rule 12(b)(6)); *Hines v. Valhalla County Corr. Facility,* No. 01 Civ. 6935(SAS), 2002 WL 1822740, at *1–2 (S.D.N.Y. Aug. 8, 2002) (treating exhaustion as jurisdictional); *Johnson v. Bendheim,* No. 00 Civ. 720(JSR), 2001 WL 799569, at *3 (S.D.N.Y. July 13, 2001) (same).

 Although the Second Circuit has not explicitly ruled on the issue of whether exhaustion is jurisdictional, it has held indirectly that it is not. The court has ruled, for example, that failure to exhaust is an affirmative defense that defendants must establish, *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) ("[A] defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."), that exhaustion need not be pled in the complaint, *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999), and that nonexhaustion may be waived. *See Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002). Subject matter jurisdiction, of course, must be pled, and its absence is not waivable. The majority of courts to specifically address the issue have agreed that exhaustion in the PLRA context is not jurisdictional.

*See Santiago v. Meinsen,* 89 F.Supp.2d 435, 441 n. 5 (S.D.N.Y.2000) ("The vast majority of courts that have considered the issue have similarly concluded that exhaustion under the PLRA is not a jurisdictional prerequisite.") (collecting cases); *Howard v. Headly,* 72 F.Supp.2d 118, 123 (E.D.N.Y.1999) (noting the PLRA "provides that a court may dismiss claims of these sorts without requiring the plaintiff to exhaust administrative remedies" and "a district court 'would not be empowered to do so if the exhaustion provision deprived the court of jurisdiction over the action'" (quoting *Underwood v. Wilson,* 151 F.3d 292, 295 (5th Cir.1998))); *Cruz v. Jordan,* 80 F.Supp.2d at 125 (same). More recently, see *Arnold v. Goetz,* 245 F.Supp.2d 527, 531–34 (S.D.N.Y.2003) (collecting cases and "join[ing] the chorus of voices"), and *Handberry v. Thompson,* No. 96 Civ. 6161(CBM), 2003 WL 194205, at *3 (S.D.N.Y. Jan. 28, 2003) (finding the "chorus of ... courts of appeals to be irresistible and manifestly correct").

### d. *Whose Burden Is It?*

Now that the Supreme Court has recently clarified which remedies are "available," *Booth,* 532 U.S. at 741, 121 S.Ct. 1819, and which inmate complaints concern "prison conditions," *Porter,* 534 U.S. at 532, 122 S.Ct. 983, courts have focused attention upon the procedural aspects of the exhaustion requirement. In practice, a number of courts continue to consider exhaustion a matter for the plaintiff to establish. *See, e.g., Richardson v. Hillman,* 201 F.Supp.2d 222, 229 (S.D.N.Y. 2002) (dismissing claims without prejudice and noting that "[i]n light of *Porter v. Nussle,* such facts [concerning exhaustion] must appear on the face of a Complaint"); *Fields v. Brown,* No. 02 Civ. 1178(SAS), 2002 WL 31202763, at *3 (S.D.N.Y. Oct. 1, 2002) ("A plaintiff must allege in his complaint that he has ex-

hausted his administrative remedies and attach the appropriate documentation, including administrative decisions, demonstrating exhaustion."); *see also Baxter v. Rose,* 305 F.3d 486, 489–90 (6th Cir.2002) (reaffirming the rule of *Brown v. Toombs,* 139 F.3d 1102 (6th Cir.1998), requiring a prisoner to plead exhaustion with particularity and attach to the complaint dispositions of available administrative remedies to demonstrate it).

Most circuits that have considered the issue, however, including this circuit, have held that nonexhaustion is an affirmative defense, and that therefore defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity. *E.g., Jenkins v. Haubert,* 179 F.3d at 28–29; *Wyatt v. Terhune,* 315 F.3d 1108, 1117–18 (9th Cir.2003) (holding nonexhaustion to be an affirmative defense); *Casanova v. Dubois,* 304 F.3d 75, 78 n. 3 (1st Cir.2002) (same); *Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir.2002) (same).

In *Ray,* the court reasoned that the burden of proving nonexhaustion is best placed on prison officials, observing that "it is considerably easier for a prison administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion," as "[p]rison officials and their attorneys can also readily provide the court with clear, typed explanations, including photocopies of relevant administrative regulations." 285 F.3d at 295. Similarly, the *Snider* court pointed out the possibilities for error in the form provided to pro se prisoners by the district court, noting that "[a] court may not dismiss for failure to exhaust administrative remedies

unless the court determines that such remedies are available." 199 F.3d at 114; *see id.* at 114 n. 3. The court proceeded to note that the plaintiff's form "answers cannot establish," and "the court will be obligated to establish[,] the availability of an administrative remedy from a legally sufficient source before it may dismiss his complaint." *Id.*

### e. *What Is the Proper Mechanism?*

■ As with the defense of official immunity, *see Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("Because the entitlement is an immunity from suit, rather than a mere defense to liability, ... it is effectively lost if a case is erroneously permitted to go to trial."); *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation"),[4] nonexhaustion should be resolved as early as possible by the court. *See, e.g., Perez v. Wis. Dep't of Corr.,* 182 F.3d 532, 536 (7th Cir.1999) ("When they assert their rights—as the defendants in this case did—then the judge must address the subject immediately."); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1277, at 475 (2d ed.1990) (noting that "as a matter of judicial administration it is a waste of time and effort to require defendant to prepare an answer if the case can be disposed of without further delay or to renew his motion in the form of a request for summary judgment" (footnote omitted)). This approach also accords with Congressional

---

**4.** Immunity and exhaustion differ significantly, of course. *See, e.g., Davis v. Streekstra,* 227 F.3d 759, 763 (7th Cir.2000). In *Davis,* Judge Easterbrook made it plain that denial of the defense of nonexhaustion did not require immediate appellate review: "Exhaustion requirements do not create absolute (or even

qualified) rights to be free from litigation. Assuredly they affect the timing of litigation, and if the administrative claim produces all of the relief the applicant requested they may prevent suit from occurring, but they do not create a 'right not to be sued.' " *Id.*

policy underlying the PLRA, which was intended to "reduce the quantity and improve the quality" of prisoner litigation, *Porter,* 534 U.S. at 524, 122 S.Ct. 983, and aimed to do so by imposing an exhaustion requirement with "teeth." *Neal,* 267 F.3d 116, 122 ("This section of the [PLRA] aims to block frivolous suits by directing them to an administrative forum before they get to court," and that forum "can serve a constructive purpose in resolving inmate claims, remedying errors by prison officials, and streamlining and clarifying those issues that remain for a court to decide." (citations omitted)).

While it is clear that nonexhaustion may be resolved on a motion to dismiss, the appropriate mechanism for doing so is somewhat unsettled. In this case, defendants moved under both 12(b)(1) and 12(b)(6). In some ways, both are problematic.

 As noted, a Rule 12(b)(1) motion is not appropriate because exhaustion is not jurisdictional. Nonetheless, a number of courts still treat the matter as jurisdictional, perhaps because courts may look outside the pleadings and consider disputed factual issues to establish jurisdiction. *See, e.g., Hines,* 2002 WL 1822740, at *1–2 (treating exhaustion as jurisdictional and considering evidence outside the pleadings, including affidavit from defense counsel);

*Long v. Lafko,* No. 00 Civ. 723(VM), 2001 WL 863422, at *1 (S.D.N.Y. July 31, 2001) (same).[5]

 Likewise, in certain circumstances, a Rule 12(b)(6) motion may not be appropriate, as under the PLRA failure to exhaust does not amount to failure to state a claim.[6] If failure to exhaust is apparent from the face of the complaint, however, a Rule 12(b)(6) motion is the proper vehicle. "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998) (citing cases determining, from the allegations of the complaint or attachments, defenses of the statute of frauds, qualified immunity, res judicata, and statute of limitations); *see Benjamin v. Goord,* No. 02 Civ. 1703(NRB), 2002 WL 1586880, at *2 (S.D.N.Y. July 17, 2002) (dismissing complaint that "admit[ted] that [plaintiff] did not pursue any administrative grievance remedies prior to filing [his] action").

 On the other hand, if, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle. Rather, Rule 12(b) provides that

**5.** A number of these cases rely upon the exhaustion rules that relate to different statutes—such as the Federal Power Act, *see Johnson,* 2001 WL 799569, at *3 (quoting *DiLaura v. Power Auth.,* 982 F.2d 73, 79 (2d Cir.1992)), or Title VII—when in fact, "[i]t all depends on the statute being applied and its intent on the matter." *Boos v. Runyon,* 201 F.3d 178, 182 (2d Cir.2000) (finding that, under the Rehabilitation Act, "failure to comply with the exhaustion requirement (i.e., filing early)" is nonjurisdictional as is "failure to comply with the timeliness requirement (i.e., filing late)").

**6.** In *Snider,* the court considered whether mandatory dismissal under § 1997e(c)(1) for

failure to state a claim included failure to exhaust administrative remedies. 199 F.3d at 111. The court had little difficulty concluding it did not. The PLRA's statutory scheme, in § 1997(e)(c)(2), empowers courts, "[i]n the event that a claim is, on its face, frivolous, malicious, [or] fails to state a claim upon which relief can be granted, ... [to] dismiss the underlying claim *without first requiring the exhaustion of administrative remedies.*" (emphasis added). *See Snider,* 199 F.3d at 111; *see also Jenkins,* 179 F.3d at 28–29 (treating failure to exhaust separately from failure to state a claim under Rule 12(b)(6)).

if, on a 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment," and the parties must be given a reasonable opportunity to present all "pertinent" materials. Fed.R.Civ.P. 12(b). Yet, in practice, courts routinely consider extrinsic material on a motion to dismiss for nonexhaustion, without first requiring conversion pursuant to Rule 12(b) or (c). *See, e.g., Orta v. City of New York Dep't of Corr.*, No. 01 Civ. 10997(AKH), 2003 WL 548856, at *1–3 (S.D.N.Y. Feb. 25, 2003) (noting, on motion to dismiss, that "evidence shows that he did not comply" with the grievance procedure); *Martin v. Snyder*, No. 00 C 983, 2002 WL 484911, at *3 (N.D.Ill. Mar. 28, 2002) (considering plaintiff's copies of letters denying grievance appeals as they "consist[ed] of records and reports of an administrative body" and "[t]herefore, the court takes judicial notice of these exhibits and will not convert the motion to a motion for summary judgment").

▪ Even without conversion, the court may consider documents annexed to the movant's papers—although not annexed to the complaint—in limited circumstances, such as when a plaintiff relies upon or has knowledge of certain documents in bringing suit. *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir.2000) ("Ordinarily our consideration is limited to the face of the complaint and documents attached to the complaint or incorporated by reference, but here we may also consult [other materials] because they are integral to [plaintiff's] claims and [plaintiff] had notice of that information.") (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991)).

Courts also routinely consider some extrinsic material when examining a pro se complaint. *See, e.g., Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001) (noting that a court may look at "not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference" and treating plaintiffs allegations in affidavit submitted to the EEOC as an integral part of her pleadings). This practice is in keeping with the liberality afforded to the pleadings of pro se plaintiffs and is usually done for a pro se plaintiff's benefit; it is not clear that such incorporated materials may be used to support the *dismissal* of a pro se complaint.

Conversion of the 12(b)(6) motion to a summary judgment motion is not ideal, for it could undermine the goals of the exhaustion requirement. Allowing discovery to proceed, or allowing successive motions for summary judgment, would result in delay and expenditure of resources; little is gained if unexhausted claims are permitted to proceed alongside the broader discovery process. On the other hand, courts could proceed with a motion for summary judgment on a limited basis, restricting initial discovery and the initial summary judgment motion to the exhaustion issue.

There may exist a middle ground, where limited extrinsic materials may be considered to settle the exhaustion defense, but this procedure has not been explicitly sanctioned in this circuit. The Ninth Circuit, addressing the question recently, considered failure to exhaust remedies "a matter in abatement, which is subject to an unenumerated Rule 12(b) motion, rather than a motion for summary judgment," in light of the general principle that "summary judgment is on the merits, whereas dismissal for failure to exhaust" is not. *Wyatt*, 315 F.3d at 1119 (internal quotations omitted). Treating the issue as outside the ambit of Rule 12(b)(6)—a notion that is supported to some extent by the text of the PLRA—allowed the court to

consider material extrinsic to the complaint without running afoul of Rule 12(b)'s mandate that in doing so a court "shall ... treat[ ]" the motion as one for summary judgment. *Id.* at 1119–20 n. 14 (noting that in "deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact" and that the procedure is "closely analogous to summary judgment"). Other courts have observed this apparent tension. *See Ray,* 285 F.3d at 295 n. 8 ("We do not suggest that defendants may not raise failure to exhaust as the basis for a motion to dismiss in appropriate cases."); *Brown v. Croak,* 312 F.3d 109, 111 n. 1 (3d Cir.2002) (rejecting argument that it would "always be improper to dismiss for failure to exhaust remedies at the pleadings stage"); *Martin,* 2002 WL 484911, at *2 (noting that "[a]t first glance, it would appear that this issue is inappropriate for resolution on a Rule 12(b)(6) motion because it would require a factual finding" but declining to convert to summary judgment and proceeding to take judicial notice of administrative grievance records indicating exhaustion).

In some respects, the failure to exhaust defense is similar to the defenses of lack of subject matter jurisdiction, lack of personal jurisdiction, and insufficient service of process. These are matters that can be raised on a motion to dismiss, and courts typically consider matters outside the pleadings in deciding these types of motions. Fed.R.Civ.P. 12(b)(1), (2), (5). The failure to exhaust defense ought to be decided the same way. As the matter is far from settled, however, and the Second Circuit has not adopted the Ninth Circuit approach, I do not hold that nonexhaustion can be raised via an "unenumerated Rule 12(b) motion" rather than via Rule 12(b)(6). Instead, I hold as follows:

■ —If nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted.

■ —If nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused. *See, e.g., Torrence v. Pesanti,* 239 F.Supp.2d 230, 232–33 (D.Conn.2003) (converting under Rule 12(c)). Taken together, Rules 12(b) and 56(c) require that if a district court considers matters outside of the pleadings, it must then convert a motion under Rule 12(b)(6) to one for summary judgment and ensure that the opposing party is given proper notice of the conversion. *Villante v. Dep't of Corr. of City of New York,* 786 F.2d 516, 521 (2d Cir.1986). Such notice is especially important when a plaintiff is pro se; the Second Circuit has required "unequivocal notice" of conversion. *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983) ("Notice is particularly important when a party is proceeding pro se and may be unaware of the consequences of his failure to offer evidence bearing on triable issues."); *see* S.D.N.Y. Local R. 56.2 (Notice to Pro Se Litigants Opposing Summary Judgment).

### f. *When May Unexhausted Claims Be Considered?*

■ Barring some other procedural impediment, exhausted claims are to be considered on the merits. A court may consider unexhausted claims on the merits, however, only to the extent that a court

may dismiss a claim that "on its face" is frivolous or malicious, or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1997(e)(c)(2). In other words, the court may consider unexhausted claims on the merits only to dismiss them as frivolous or malicious or for failure to state a claim. *Cf. Rodriguez*, 2002 WL 1424586, at *1 (discussing remand from court of appeals that affirmed grant of summary judgment but remanded for consideration of the exhaustion issue, noting "[a]t that point, the combined efforts of Congress, the Supreme Court, and the Second Circuit to reduce prisoner litigation had taken a case that had been found by this Court to be without merit, in an opinion to which plaintiff had already presented his appellate objections, which in turn were also found without merit by the Court of Appeals, and returned it for a potentially complex additional inquiry into exhaustion," and where "[i]f plaintiff failed to exhaust, the resulting dismissal would be without prejudice to his re-filing this meritless claim after exhausting the grievance procedures").

Other appellate courts have also vacated district court decisions that reached the merits—even though finding for the officials—without considering the issue of exhaustion first. *See e.g., McAdoo v. Terhune*, 54 Fed.Appx. 664, 664 (9th Cir.2003) (unpublished decision) (vacating grant of summary judgment, noting that the "district court erred in reaching the merits of McAdoo's case"); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.1998) (holding court will not "process or decide the merits of any case on appeal that does not comply with the statute"). Whereas the PLRA requires dismissal for failure to state a claim without requiring exhaustion, no such authorization exists for a grant of summary judgment. *See* 42 U.S.C. § 1997e(c)(2).

### g. *Is Dismissal With or Without Prejudice?*

A dismissal for failure to exhaust is usually without prejudice, *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir.2002), because failure to exhaust is ordinarily a "temporary, curable, procedural flaw." *Snider*, 199 F.3d at 111. That is, "[i]f the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit (in the event the administrative claim fails to afford him the desired relief)." *Id.* at 111–12.

Thus, where a plaintiff is effectively barred from administrative exhaustion—such as when the time for administrative exhaustion has expired *and* the inmate has been denied a waiver to file a late grievance—courts have not hesitated to dismiss *with* prejudice. *See Orta*, 2003 WL 548856, at *3 (dismissing with prejudice because inmate's transfer, from city to state custody, rendered future exhaustion impossible); *Patterson v. Goord*, No. 02 Civ. 759(JSM), 2002 WL 31640585, at *1 (S.D.N.Y. Nov. 21, 2002) (dismissing complaint with prejudice after plaintiff failed to obtain leave to file late grievance).

Where plaintiff may be barred from re-filing by the statute of limitations, however, existing authority is less clear. While "[f]ailure to exhaust administrative remedies precludes only the current lawsuit," *Morales*, 278 F.3d at 131 (citation omitted), a dismissal without prejudice is tantamount to a dismissal with prejudice if the statute of limitations has expired, or is likely to expire before re-filing. In practice, tolling may ameliorate this result.

### h. *Is the Statute of Limitations Tolled?*

In New York, a § 1983 action must be filed within three years of the

date the cause of action accrued. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir.2002). Although New York law governs the length of the statutory period, federal law determines when a § 1983 cause of action accrues. *Id.* (citations omitted). Accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* at 80 (internal quotations and citations omitted); *see Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir.1995).

Upon refiling following exhaustion, however, the issue may be presented "whether the time spent pursuing administrative remedies should be tolled under N.Y. C.P.L.R. [204(a) ], which provides that 'Where the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced.'" *McKinnis v. Williams*, No. 00 Civ. 8357(RWS), 2001 WL 873078, at *2 (S.D.N.Y. Aug. 1, 2001); *Hayes v. N.Y.S. D.O.C. Officers*, No. 97 Civ. 7383(MBM), 1998 WL 901730, at *7 (S.D.N.Y. Dec. 28, 1998) ("Had plaintiff pursued his administrative remedies after the effective date of the PLRA, when doing so became mandatory, there would be no question that the statute of limitations would have been tolled during the pendency of those proceedings."); *see also Dixon v. Page*, 291 F.3d 485, 490 (7th Cir.2002) ("[T]he time spent in exhausting administrative remedies is tolled for purposes of limitations on filing a federal complaint."); *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir.2001) (holding "[t]here can be no question that a federal court applying Illinois law [similar to N.Y. C.P.L.R. 204(a) ] must toll the statute of limitations if a 'statutory prohibition' exists that prevents a plaintiff's cause of action" and noting the Fifth and Sixth Circuits agree that the PLRA is such a prohibition). *But cf. Thomas v. Henry*, No. 02 Civ. 2584(JSR)(DFE), 2002 WL 922388, at *2

(S.D.N.Y. May 7, 2002) (" '[T]he pendency of a grievance ... does not toll the running of the limitations periods.' ") (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)).

■■■■ Under N.Y. C.P.L.R. 204(a), an inmate may receive, according to the maximum time limits of the IGP, perhaps 11 weeks of additional time. *See* N.Y. Comp.Codes R. & Regs. tit. 7, §§ 701.7, 701.8. In addition, traditional defenses to the bar of the statute of limitations may apply, including waiver, estoppel, or equitable tolling. Courts may combine a dismissal without prejudice with equitable tolling (when a judicial stay is not available) to extend the statute of limitations "as a matter of fairness where a plaintiff has ... asserted his rights in the wrong forum." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996). The doctrine is especially applicable when the "right forum" is mandated by statute and is a prerequisite to judicial review. *Id.* Equitable tolling, however, "requires a party to pass with reasonable diligence through the period it seeks to have tolled," *id.* (internal quotations omitted) and thus is available "only so long as the plaintiff has exercised reasonable care and diligence." *Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993); *cf. Baxter*, 305 F.3d at 489 ("If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run.").

A related issue is whether the time spent in federal court before dismissal would also be tolled. *See, e.g., Clifford v. Gibbs*, 298 F.3d 328, 333 (5th Cir.2002) (applying equitable tolling for the duration of the federal lawsuit where complaint was dismissed without prejudice, and for duration of subsequent administrative exhaus-

tion); *Napier v. Preslicka*, 314 F.3d 528, 534 n. 3 (11th Cir.2002) ("The Eleventh Circuit has not yet been faced with a case that involves a prisoner's claim that is both barred by the PLRA during imprisonment and barred by the applicable statute of limitations after release from prison, thereby giving the plaintiff no opportunity to ever have his claim heard on the merits by a federal court. We proffer, but do not hold, as that issue is not before us, that such a result may be mitigated by the doctrine of equitable tolling. . . .").

For the reasons set forth below, I do not need to reach these issues in this case—at least not at this time.

### i. *May the Court Stay Rather than Dismiss?*

Where a plaintiff has not exhausted and a case must be dismissed without prejudice pending exhaustion, the issue arises whether the court may stay the action pending exhaustion rather than dismiss if there is a danger the statute of limitations may expire while the plaintiff is exhausting. In the habeas context, for example, the time a petitioner spends exhausting state court remedies is not "counted" for the one-year limitations period under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2244(d)(2); *Acosta v. Artuz*, 221 F.3d 117, 119 (2d Cir.2000).

■ In the context of § 1983 and the PLRA, however, courts have squarely held that the district court may not stay the action pending exhaustion, as Congress eliminated the authority to do so by enacting the PLRA. *See Neal*, 267 F.3d at 122 (discussing former § 1997e(a) which allowed a stay of up to 180 days to allow plaintiff to exhaust). Pre-suit exhaustion is thus required.

## II. *Application*

First, I address the procedural requirements that apply to plaintiff's claims, including exhaustion. Second, although I conclude that dismissal is required, I will proceed to consider whether the allegations state a claim, and I will do so by category.

I conclude that the suit as a whole is premature because McCoy has failed to fully exhaust administrative remedies as to any of the claims. In addition, I conclude that, with the exception of two excessive force claims, all of the claims must be dismissed for failure to state a claim. Although it appears that the statute of limitations will expire soon on the two claims, I have no alternative but to dismiss.

### A. *Procedural Requirements*

### 1. *McCoy May Not Sue Defendants In Their Official Capacities*

Although McCoy purports to sue all defendants in both their individual and official capacities, he may sue them only in their individual capacities. Here, all of the defendants are DOCS employees and are therefore immune from suit in their official capacities. The claims against defendants in their official capacities are dismissed, with prejudice.

### 2. *Administrative Exhaustion*

### a. *Remedies Were Available to McCoy*

In light of the Supreme Court's holding in *Porter v. Nussle*, McCoy was required to exhaust all of the claims he asserts in this action. Moreover, the inmate grievance program was "available" to him, as his complaint makes clear, for he filed a number of grievances concerning some of the misconduct he alleges. It is also well-established that "New York permits inmates to file internal grievances as to virtually any issue affecting their confine-

ment." *Flanagan*, 2002 WL 122921, at *1. Finally, McCoy makes no allegations that prison officials interfered with his access to any aspect of the grievance program. *Cf. O'Connor v. Featherston*, No. 01 Civ. 3251(HB), 2002 WL 818085, at *3 (S.D.N.Y. Apr. 29, 2002) (finding "substantial or reasonable" attempt to exhaust sufficient in light of defendants' conduct); *Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999*, No. 99 Civ. 3455(DLC), 2000 WL 274184, at *3 (S.D.N.Y. Mar. 13, 2000) (ruling that assertions that inmate had been "frustrated" in his attempts to file grievances required denial of motion to dismiss); *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) ("[W]e have held that inmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies."); *Brown*, 312 F.3d at 112 (holding that a thwarted remedy is not "available").

**b. *Conversion is Required as Nonexhaustion is Not Apparent from the Face of the Complaint***

 It is not clear from the face of his complaint that McCoy failed to exhaust. Although the complaint alleges that he filed certain grievances, it does not allege that he filed grievances with respect to all the incidents, nor does it allege that he filed any appeals, initially or to the CORC. This failure, however, is not a basis for dismissal on a motion to dismiss, for Second Circuit law does not require McCoy to plead exhaustion to survive a motion to dismiss. Accordingly, I must look to extrinsic materials to determine exhaustion and I must convert this motion to a summary judgment motion.

**c. *McCoy Had Unequivocal Notice of the Conversion***

 The issue arises whether McCoy has been given "unequivocal notice" of his obligation to submit evidentiary materials and an opportunity to do so. *See Beacon Enters., Inc.*, 715 F.2d at 767. Special care must be taken here, as the Court is "mindful of the care exercised in this Circuit to avoid hastily dismissing complaints of civil rights violations." *Gregory*, 243 F.3d at 691.

I conclude that McCoy has been given both notice and opportunity. First, defendants moved to dismiss specifically on the exhaustion point, among others, and McCoy responded to the issue in detail. Second, plaintiff twice asked for more time to submit extrinsic materials—exhibits—relating to the exhaustion issue, and the Court granted those requests.

McCoy's requests for additional time demonstrate his awareness that he should submit any additional relevant materials that were available. (*See* McCoy Letter of 3/27/02; Order dated Apr. 1, 2002; McCoy Letter of 4/30/02, Memo Endorsed on May 7, 2002). For example, McCoy's letter of March 27, 2002 discusses exhaustion and asks for "an extension of time to acquire my documents (exhibits) which support my claims from my mom" and "time to prove my claims by submitting the necessary documents (exhibits) on behalf of my civil complaint." (McCoy Letter of 3/27/02 at 2, 4). McCoy's request was granted. (*See* Order dated Apr. 1, 2002). By letter dated April 30, 2002, McCoy again requested additional time to submit his "rebuttal ... along with the exhibits in support." (McCoy Letter of 4/30/02). That request was also granted. (*See* McCoy Letter of 4/30/02, Memo Endorsed on May 7, 2002).

Additionally, in his two opposition papers, McCoy directly addressed exhaustion and referred the Court to documentary evidence. McCoy stated initially that more exhibits concerning his grievances were "forthcoming" and that he was "vigorously attempting to catch up with my

mom so that I could have her mail them to me." (McCoy Opp. received 6/6/02 at 3, ¶ 4). In subsequent papers, again addressing exhaustion, McCoy referred to exhibits, including his Article 78 petition, and he urged the Court to consult with grievance personnel and examine administrative records. (*See* McCoy Letter of 6/20/02 at 2).

Third, both sides have already submitted materials beyond the complaint— McCoy's opposition papers (including exhibits) and Eagen's affidavit, which was attached to defendants' notice of motion served in March 2002. Hence, although the Court did not formally state that it was converting this motion to a summary judgment motion, McCoy was put on notice that if he had any other relevant materials he was to submit them and he was given more than a reasonable opportunity to do so, as McCoy's own submissions clearly demonstrate.

Accordingly, due to the unique facts of this case, I find that McCoy had "unequivocal notice" both that the exhaustion issue was under consideration and that he had the opportunity to submit extrinsic materials pertinent to that issue. *Beacon Enters., Inc.,* 715 F.2d at 767. McCoy knew that the Court would render a judgment without his input if he failed to submit further evidence regarding exhaustion, and McCoy in fact submitted relevant extrinsic evidence.

#### d. *McCoy Failed to Exhaust Available Remedies*

■ Accordingly, I consider the extrinsic materials submitted by both sides. In his opposition papers, McCoy essentially concedes that he did not comply with the exhaustion requirement, arguing in turn that 1) his state court challenge to the disciplinary proceeding under Article 78 satisfied the requirement, 2) he was not required to fully exhaust because he sought money damages, which were unavailable through the IGP, and 3) he did in fact file a number of grievances.

In rhetorical style, McCoy inquires, "Well, with regards to defendants stating that plaintiff failed to exhaust his administrative remedies . . . does it help to know that plaintiff put in an Article 78 against defendants involved in the incident arising on March 17, 1998, and especially in the Special Housing Unit (SHU) thereafter? ? ?" (McCoy Opp. received 6/6/02 at 3, ¶ 4). McCoy refers the Court to his Article 78 brief and exhibit list, which purportedly include a number of grievances.

McCoy's contention that he exhausted his administrative remedies with regard to his March 17, 1998 excessive force claim because he appealed the disciplinary hearing judgment is without merit. An appeal of a disciplinary hearing determination does not satisfy the PLRA's exhaustion requirement. *See Cherry v. Selsky,* No. 99 Civ. 4636(HB), 2000 WL 943436, at *6–7 (S.D.N.Y. July 7, 2000) (finding that plaintiff was required to exhaust DOCS IGP remedies before filing suit, even though he had already appealed disciplinary charges); *Samuels v. Selsky,* No. 01 Civ. 8235(AGS), 2002 WL 31040370, at *8 (S.D.N.Y. Sept. 12, 2002) (noting that issues except those "directly tied" (such as a due process claim) to the disciplinary hearing and any appeal must be appealed collaterally through the IGP).

■ McCoy also asks: "In civil litigations requesting compensatory and punitive damages of relief, well, was it necessary for plaintiff to exhaust his remedies through the grievance department in Sing Sing . . . when the facility grievance channels couldn't compensate plaintiff monetary relief of damages?" (McCoy Opp. received 6/6/02 at 2, ¶ 3). This question has been definitively answered in the affirmative, and thus McCoy was required to

first file a grievance—and pursue it until final appeal if not resolved—notwithstanding the remedy he sought. *Booth,* 532 U.S. at 741, 121 S.Ct. 1819.

McCoy continues in opposition: "Again ... the defendants alleged that plaintiff failed to exhaust his remedies through facilities grievance department.... Well, though I contended that I did construct an Article 78 petition concerning being assaulted by Sing Sing's correctional officers 3/17/98, as well as being framed and penalized for an assault on C.O.'s, and thereafter being subjected to cruel and unusual punishment ... the more defendants argued that I failed to exhaust my remedies through Sing Sing's grievance department, the more it dawned on me that I in fact put in several grievances, concerning the following." (McCoy Letter of 6/20/02, at 2). McCoy proceeds to refer to at least nine grievances, as well as an informal attempt to seek help from the prison psychologist to "deter the forewarned attack on me." (*Id.*). McCoy never states that he filed any appeals, intermediate or final, following any grievance.

Hence, it appears that McCoy "essentially concedes" nonexhaustion. *Flanagan,* 2002 WL 122921, at *1; *see Miller,* 2002 U.S. Dist. Lexis 21176, at *5 ("Moreover, confronted with defendants' representation that he never filed a grievance, plaintiff argues only that he was not required to do so."); *Mack v. Artuz,* No. 01 Civ. 11832(JSR)(GWG), 2002 WL 31845087, at *4 (S.D.N.Y. Dec. 19, 2002) (finding plaintiff on notice of nonexhaustion defense and noting that plaintiff "in his responsive papers implicitly concedes that these claims were not exhausted").

The conclusion that McCoy has not exhausted is also supported by defendants' submissions, including the declaration of Thomas G. Eagen, Director of the DOCS IGP. Eagen states that "CORC decisions ... are the final administrative determination rendered by DOCS with respect to grievances filed by inmates," and that McCoy's complaints are "grievable" under DOCS regulations. (Eagen Decl. ¶ 3, 5). Finally, he states that a search of CORC files found no "records or indication" that McCoy filed an appeal of any grievances at Sing Sing. (Eagen Decl. ¶ 5). On this record, a reasonable factfinder could only conclude that McCoy did not fully exhaust any of his claims and all the claims must be dismissed for failure to exhaust. In light of his concessions, it is inconceivable that McCoy could submit any contradictory material, as he does not dispute the defendants' central point, that he failed to appeal any grievances.

Dismissals for failure to exhaust are usually without prejudice to refiling after exhaustion. *See Morales,* 278 F.3d at 131.[7] Before I reach the issue of whether the dismissal here is with or without prejudice, I consider whether the claims state a claim upon which relief may be granted.

### B. *The Merits*

In addition to the procedural barriers that prevent McCoy's suit at this time, nearly all of his complaint must, in addition, be dismissed for failure to state a claim.

### 1. *McCoy Fails to Allege Personal Involvement*

 Among the named defendants, McCoy sues Officer Rios; Drs. Gross and

---

7. The other types of dismissal at issue here, including failure to state a claim—whether due to defects in pleading or failure to comply with the statute of limitations—are ordinarily with prejudice unless otherwise specified. *See* Fed.R.Civ.P. 41(b); *Criales v. American Airlines, Inc.,* 105 F.3d 93, 97 (2d Cir.1997); *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 896–97 (2d Cir.1983).

Halko; DelSantos, who worked as a nurse at Sing Sing; the entire Sing Sing Mental Health and Medical Staff; and five John and Jane Does. Even reading the complaint in a light most favorable to plaintiff, however, McCoy does not plead any facts to suggest that these defendants were personally aware of or involved in any of the alleged constitutional violations. Indeed, Halko, Gross, and the John and Jane Doe defendants are not even mentioned in the complaint. Likewise, McCoy's pleadings make no allegations against the unnamed members of the mental health and medical staff.

 "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" *Dove v. Fordham Univ.*, 56 F.Supp.2d 330, 335 (S.D.N.Y. 1999) (quoting *Morabito v. Blum*, 528 F.Supp. 252, 262 (S.D.N.Y.1981)). Accordingly, all claims against these defendants are dismissed.

As to the conditions of confinement claim, the complaint contains no allegations against any particular defendants, but instead makes allegations against "prison officials." (Compl.¶ 118). Al-though these officials have not been identified, I will address the merits of this claim.

### 2. McCoy Fails to State a Claim of Inadequate Medical Care

 I must dismiss McCoy's claims of inadequate medical care against defendants O'Brien, Rivera, Aitcherson, and Figueroa because McCoy has failed to allege facts to suggest an unconstitutional deprivation of medical treatment. The claims against O'Brien and Rivera also appear to be time-barred, but in light of the unsettled law regarding exhaustion and tolling, I decline to dismiss them on this basis at this time.[8]

 To establish an inadequate medical care claim of constitutional significance, a plaintiff must show that defendants were deliberately indifferent to his serious medical needs. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The deliberate indifference standard contains both an objective element and a subjective element. The former requires that the alleged deprivation of care be sufficiently serious in objective terms: the plaintiff's condition must present a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway*, 37 F.3d at 66 (citations omitted). The subjec-

---

**8.** Because McCoy is suing individual employees for their individual deliberate indifference to his medical needs, the timeliness of each claim against each defendant is important. *See, e.g., Espinal v. Coughlin*, No. 98 Civ. 2579(RPP), 1999 WL 387435, at *3 (S.D.N.Y. June 14, 1999) (performing a "separate statute of limitations analysis ... with respect to each defendant" where plaintiff alleged that defendants exhibited deliberate indifference on specific occasions). Here, I deem the complaint filed on January 20, 2001. A pro se prisoner's § 1983 complaint is "deemed filed, for statute of limitations purposes, when it is delivered to prison officials." *Tapia-*

*Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir.1999) (citations omitted). McCoy's complaint is dated and postmarked January 20, 2001 and was received by this Court's Pro Se Office on January 24, 2001.

The complaint states that O'Brien transferred McCoy's treatment to Aitcherson on September 4, 1997, per McCoy's request. (Compl.¶ 48). Additionally, McCoy alleges only one incidence of deliberate indifference with respect to Rivera, that occurred on August 14, 1997. (Compl.¶¶ 41–45). Because there are no allegations against O'Brien or Rivera after January 1998, the claims against them appear to be time-barred.

tive element requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. *Id.* Mere negligence, medical malpractice, or differences of opinion regarding medical treatment do not give rise to an Eighth Amendment violation. *Boomer v. Lanigan,* No. 00 Civ. 5540(DLC), 2001 WL 1646725, at *3 (S.D.N.Y. Dec. 17, 2001). Denial of psychiatric or mental health care, if sufficiently serious, may constitute a violation of the Eighth Amendment. *See Young v. Coughlin,* No. 93 Civ. 262(DLC), 1998 WL 32518, at *4 (S.D.N.Y. Jan. 29, 1998) (citations omitted).

McCoy's allegations against these defendants are insufficient to establish a constitutional deprivation, and thus are dismissed with prejudice.

### a. *Defendant O'Brien*

▮ McCoy alleges that, on January 22, 1997, when he first sought counseling from Sing Sing Mental Health Services, his psychologist, defendant O'Brien, displayed an immediate prejudice against him, accusing him of being "highly litigious" and failing to help him "ascertain peace within the depressive state that dominated his inner soul." (Compl.¶¶ 5–6, 8, 12). McCoy had another session with O'Brien on March 18, 1997. (Compl.¶ 23). Later, upon gaining access to his mental health records in October 1998 after he was transferred to Southport, McCoy learned that O'Brien had noted during that session, "[h]e appears to be rationalizing Mental Health Services in a manipulative fashion for possible future litigation and/or immediate gratification." (Compl.¶¶ 24, 116).

▮ These allegations offer no more than speculation about O'Brien's motives.[9] They utterly fail to state a claim of deliberate indifference to specific, serious medical needs.

### b. *Defendant Rivera*

▮ McCoy alleges that Rivera, "upon information and belief," was also part of the conspiracy against him. His primary complaint is that on August 14, 1997, after passing out and complaining of amnesia, McCoy was interviewed by defendant Rivera, who "neglect[ed] the seriousness of [his] amnesia," and sent McCoy back to his cell, where he "could have been subjected to any type [of] physical abuse and/or death ... in that precarious state of being." (Compl.¶¶ 41–43). Rivera also noted that McCoy appeared to be feigning amnesia. (Compl.¶ 42).

On their face, McCoy's allegations about the mistreatment of his amnesia border upon the frivolous. In any event, they fail to state a claim of deliberate indifference. Even if McCoy's purported amnesia was objectively serious enough to warrant attention, like O'Brien, Rivera's notes—as reflected in the complaint—make it quite clear that, subjectively, both were acting in good faith in evaluating McCoy's medical condition.

### c. *Defendant Aitcherson*

▮ McCoy also fails to state a claim of inadequate medical care against Aitch-

---

9. McCoy also implies that O'Brien—like all the other defendants—was engaged in a conspiracy against him stemming from a 1996 incident at Rikers Island. These allegations also fail to state a constitutional violation. To successfully assert a § 1983 claim for conspiracy, plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing harm to plaintiff. *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). McCoy's allegations of conspiracy are far too broad and conclusory to meet this standard. *Id.*

erson. The crux of McCoy's claim is that Aitcherson disregarded his feelings of "displacency." (Compl.¶¶ 48–49, 52). He makes no allegations of a serious psychological condition requiring urgent attention, nor does he aver that Aitcherson consciously disregarded a risk of substantial harm to his health. These allegations do not support a claim of deliberate indifference. *See, e.g., Pope v. Swanston,* No. 87 Civ. 3530, 1990 WL 152559, at *4 (E.D.N.Y. Oct. 1, 1990) ("The propriety or adequacy of a course of psychological treatment is not a matter for courts to second-guess in the absence of a showing of deliberate indifference.").

#### d. *Defendant Figueroa*

McCoy also fails to state an Eighth Amendment claim against Figueroa. The fact that Figueroa kept McCoy waiting for twenty-five minutes and then sent him back to his cell without treating his chest pains does not amount to a constitutional deprivation. McCoy fails to allege for what serious medical condition he sought and was denied treatment, what harm, if any, resulted from the delay in treatment, or that Figueroa subjectively exhibited a deliberate indifference to his medical condition. McCoy's allegations against Figueroa, at most, amount to a claim of negligence, and as such are not sufficient to establish an Eighth Amendment violation.

#### 3. *McCoy Fails to State Claim Based on SHU Conditions of Confinement*

To succeed on an Eighth Amendment claim based on conditions of confinement, a plaintiff must show that the conditions were "sufficiently serious" under an objective standard, such that they "result[ed] in the denial of the 'minimal civilized measure of life's necessities.'" *Cruz v. Jackson,* No. 94 Civ. 2600(RWS), 1997 WL 45348, at *6 (S.D.N.Y. Feb. 5, 1997) (citing *Wilson v. Seiter,* 501 U.S. 294, 298–

99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Furthermore, prison officials must have "kn[own] of and disregarded an excessive risk to inmate health or safety." *Branham v. Meachum,* 77 F.3d 626, 631 (2d Cir.1996) (citations omitted).

McCoy's allegations concerning the conditions of his confinement in SHU do not state a claim under the Eighth Amendment. First, the mere presence of vermin in a prisoner's housing area does not constitute "punishment" under the Eighth Amendment. *Benjamin v. Fraser,* 161 F.Supp.2d 151, 174 (S.D.N.Y. 2001) (citation omitted). Second, the denial of warm food is not, by itself, a deprivation of the "minimal civilized measure of nutrition." *Cruz v. Jackson,* 1997 WL 45348, at *6 (internal quotations omitted). Third, a two-week suspension of shower privileges does not suffice as a denial of "basic hygienic needs," *id.* at *7, nor does failure to provide razors for shaving rise to the level of constitutional concern. The conditions of confinement claim is hereby dismissed with prejudice.

#### 4. *McCoy Fails to State Claim of Interference With Access to Court*

It is well-settled that inmates have a constitutional right of reasonable access to the courts. *Ahlers v. Carrillo,* No. 94 Civ. 7945(DC), 1997 WL 167049, at *3 (S.D.N.Y. Apr. 9, 1997) (citations omitted). Prison officials, however, are not required to ensure that inmates have unlimited access; not every interference with this right will result in a constitutional violation. *See id.* To establish a constitutional violation, a plaintiff must show that the alleged deprivation actually impaired a legal claim. *Shabazz,* 1998 WL 901737, at *3.

Here, McCoy has not alleged that the delayed mailing of his Article 78 petition actually interfered with the pursuit of his

appeal. In fact, the attachments to McCoy's Article 78 Petition, including correspondence from the State of New York Clerk of Court's Office acknowledging receipt of his papers, suggest that the proceeding was forwarded to a judge for consideration. (*See* Pl. Art. 78 Pet. Attach.). Thus, McCoy fails to state a valid claim of interference with his right of access to the court, and this claim is dismissed with prejudice.

### 5. *McCoy Fails to State Verbal Harassment Claim*

■ To the extent that the complaint can be read to allege an Eighth Amendment claim against Murray based on his alleged verbal harassment of plaintiff on March 12, 1998, such conduct is not actionable under § 1983. *See, e.g., Harris v. Keane,* 962 F.Supp. 397, 406 (S.D.N.Y. 1997) ("Allegations of threats, verbal harassment or profanity, without any injury or damage, do not state a claim under § 1983.") (citing *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986)). Hence, the claim of verbal harassment is dismissed with prejudice.

### 6. *McCoy States Claims of Excessive Force*

While McCoy has sufficiently pled facts to state two Eighth Amendment claims based on the use of excessive force, he has served only one defendant involved in each incident, and, as discussed above, McCoy may not proceed on the claims as they are unexhausted.

### a. *January 23, 1998 Incident*

■ The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by prison officials. *Romano v. Howarth,* 998 F.2d 101, 104 (2d Cir.1993). The inquiry into an Eighth Amendment claim consists of both an objective and a subjective

prong. *See id.* at 105. Objectively, a plaintiff must show that the alleged use of force was sufficiently serious to be actionable. Only the use of physical force that is "repugnant to the conscience of mankind" amounts to a constitutional violation. *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Subjectively, the plaintiff must then show that prison officials acted wantonly. *See Romano,* 998 F.2d at 105. A finding of wantonness depends on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.*

■ Applying these standards to the January 23, 1998 incident involving Officers Moo–Young, Cruz, and Bedford, McCoy's allegations are sufficient to state an excessive force claim. While the complaint does not set out in detail the extent of the injuries he suffered, McCoy states that he was treated in the emergency room for second-degree burns to his right arm. McCoy also alleges facts from which wantonness can be inferred. According to the complaint, the officers did not apply force to "maintain or restore discipline," but to retaliate against McCoy for comments he had made to one of the officers. Also, the officers were allegedly angry because false disciplinary charges they had brought against McCoy were dismissed. (Compl.¶¶ 67, 69, 71, 85). McCoy has thus stated a claim against Moo–Young, Cruz, and Bedford.

■ McCoy also alleges that Officer Ramirez was involved in the January 23, 1998 incident, though he does not describe Ramirez's role. If McCoy can establish that excessive force was used against him, and that Ramirez was present and knew or should have known of the unconstitutional conduct in time to intervene, then Ramirez would be liable under § 1983. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988) ("A law enforcement officer has an affir-

mative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."). Hence, the claim against Ramirez may not be dismissed on this basis.

Similarly, Murray, as a supervisory official, may be liable for damages under § 1983 if he failed to intervene in the alleged use of force, provided that he knew or had reason to know that excessive force was being used. *See Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). McCoy avers that, rather than supervising the pat-frisk, Murray was hiding around the corner during the incident. Construed broadly, the complaint alleges that Murray's proximity to the incident and supervisory position gave him the opportunity to prevent the alleged use of force.

In sum, McCoy states a valid claim of excessive force against Moo–Young, Cruz, Bedford, Ramirez, and Murray.

### b. *March 17, 1998 Incident*

■ Applying the same standards to the March 17, 1998 incident in the commissary, McCoy also states a claim against Officers Viviano, Gilchrist, Paroline, and Evans. McCoy alleges that the officers, in front of other inmates and staff, forced him to the ground, handcuffed him, cleared the area of witnesses and beat him until he "looked like the elephant man, literally." (Compl.¶¶ IV–A, 117). McCoy states that he was found guilty of charges of assault-

ing the staff members involved in this incident.

Officer Rios was assigned to the commissary post, but, according to the complaint, Rios "never involved himself." (Compl.¶ 117). Thus, as noted above, this claim is dismissed. McCoy states a claim, however, against the other officers, Viviano, Gilchrist, Paroline, and Evans, as the complaint alleges an assault that it is objectively sufficiently serious, and from which wantonness can be inferred.

### c. *Claims Against Defendants Not Served*

As the docket in this matter reflects, of the defendants involved in the alleged beatings, only Murray from the first incident and Gilchrist from the second have been served with the summons and complaint. According to seven returns of service submitted by McCoy, the Marshal's Service was unable to serve the other defendants because it either required more identifying information (i.e., first initial or first name), or Sing Sing indicated there was no such defendant at the facility. (McCoy Letter of 6/20/02, enclosures (USM–285, Process Receipt and Return)). Thus, defendants Moo–Young, Cruz, Bedford, and Ramirez, from the first incident, and defendants Viviano, Evans, and Rios, from the second, were never properly served, despite attempts by the Marshal's Service to do so.[10]

---

**10.** Neither the docket nor plaintiff's submissions indicate *any* attempt by the plaintiff to serve Officer Paroline. While reliance upon the U.S. Marshals may be "complete," *see, e.g., Muhammad v. Coughlin,* No. 89 Civ. 5088(PKL), 1994 WL 68168, at *3 (S.D.N.Y. 1994) (noting that Second Circuit authority "permit[s] complete reliance on the Marshal's Service" and that other "courts have held 'the prisoner need furnish no more than the information necessary to identify the defendant' ") (quoting *Sellers v. United States,* 902 F.2d 598, 602 (7th Cir.1990)), and courts have found that "[t]he Marshal's failure to accomplish the

task is automatically 'good cause' " that excuses untimely service, *Del Raine v. Williford,* 32 F.3d 1024, 1029 (7th Cir.1994) (citing *Romandette,* 807 F.2d at 311), McCoy has apparently made no attempt to initiate service on Paroline at all. This Court has already granted McCoy three extensions of the time for service. The last of these extensions, granted by order dated November 20, 2001, required McCoy to complete service by January 17, 2002. It is now more than one year beyond that deadline and two years since the complaint was filed. Any claims against Paroline are therefore dismissed. Refusal to further

■ An incarcerated pro se litigant is entitled to rely on service by the Marshal's Service. *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir.1986). Under such circumstances, the rules concerning service of process are construed liberally. *Id.; see Koehl v. Rowe*, No. 96 Civ. 1001, 1997 WL 724647, at *6 (E.D.N.Y. Nov. 14, 1997). Rule 4(m) provides that a court may extend the 120–day deadline for service "if the plaintiff shows good cause for the failure." *See Thompson v. Maldonado*, 309 F.3d 107, 109 (2d Cir.2002). I need not reach the issue of whether to grant McCoy additional time, however, as all of the claims are dismissed for nonexhaustion.

### *CONCLUSION*

For the reasons enumerated above, defendants' motion to dismiss is granted. None of the claims have been exhausted, and thus all may be dismissed on that basis alone. Moreover, with the exception of the two excessive force claims, none of the claims states a claim upon which relief may be granted. Accordingly, all of plaintiff's claims are dismissed with prejudice except the two excessive force claims. Even though, as a practical matter, plaintiff may have difficulty exhausting those claims before the statute of limitations expires—and additionally because he is no longer in DOCS custody—those claims are dismissed as well, albeit without prejudice to refiling in the event he is able to exhaust and file before the statute of limitations expires.

extend the deadline for service results in dismissal with prejudice because the statute of limitations for the excessive force claim has expired. *See Covington v. City of New York*, No. 98 Civ. 1285(MGC), 1999 WL 739910, at *5 (S.D.N.Y. Sept. 22, 1999) (granting motion

The Clerk of the Court shall enter judgment accordingly and this case shall be closed.

SO ORDERED.

to dismiss, with prejudice, where plaintiff had made no attempt to serve remaining defendants during the year that had passed since the 120–day deadline for service); *see also Frasca v. United States*, 921 F.2d 450, 453 (2d Cir.1990).