Allah KASIEM, Plaintiff,

v.

Geneve SWITZ; Pedro Diaz and The New York State Department of Correctional Services, Defendants.

No. 09 Civ. 09361 (RJH).

United States District Court, S.D. New York.

Dec. 20, 2010.

Allah Kasiem, Fallsbury, NY, pro se.

Jeb Harben, Office of the Attorney General, New York, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD J. HOLWELL, District Judge:

Before the Court is defendants Geneviere Switz (s/h/a Geneve Switz) ("Switz"), Pedro Diaz ("Diaz"), and New York State Department of Correctional Services' ("DOCS") motion to dismiss [8] *pro se* plaintiff Allah Kasiem's ("Kasiem") complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Kasiem brings this action under 42 U.S.C. § 1983, alleging violations of his rights while incarcerated at Sullivan Correction Facility ("Sullivan") involving defendants' purported failure to adequately treat his claimed hearing problems and related ear pain. For the reasons that follow, the Court converts defendants' motion to one for summary judgment and, because Kasiem has failed to exhaust his administrative remedies, GRANTS the converted motion.

## I. FACTUAL SETTING

For the purposes of this motion, the following facts are taken as true.

Kasiem is currently serving a fifty-year-to-life sentence at Sullivan for two counts of second degree murder. (Def.'s Mem. at 2.) On October 10, 2009, Kasiem filed this complaint, alleging six causes of action regarding the conduct of defendants Switz, a physician's assistant employed by DOCS, and Diaz, a DOCS regional health administrator, in failing to treat Kasiem's purported hearing loss and related pain. (Compl. at 3A–3C, 7; Def.'s Mem. at 1.)[1] Kasiem

---

**1.** Including counts of "Deliberate Indifference;" "Undue Delay in Medical Treatment;"

claims to have suffered from complete loss of hearing in his left ear and "severe" loss of hearing in his right since at least May 21, 2009. (Compl. at 3.) He alleges that on several occasions he sought medical treatment but that the Sullivan medical staff both refused to treat his condition and refused to refer him to an audiologist. (*Id.*) Kasiem did, however, see an audiologist, one John Serhan ("Serhan"), on October 2, 2009; but apparently he was again refused "any medical treatment." (*Id.*) Kasiem alleges that that refusal was based on Switz's wrongful instruction to Serhan to deny Kasiem medical treatment. (*Id.*) He alleges that due to these events, he has suffered pain, he has been subjected to discipline for not obeying directions he did not hear, and he is in danger in prison. (*Id.*)

Kasiem claims he "made several complaints to the Sullivan Medical Department," and "has filed numerous grievance complaints." (*Id.*) More specifically, he states that he filed a grievance covering "[a]ll claims" contained in his complaint with the Inmate Grievance Resolution Committee ("IGRC") and its "Central Office Chief Medical Officer." (*Id.* at 4.) After that filing resulted in "[d]eliberate indifference," Kasiem appealed the grievance to the Central Office Review Committee ("CORC"), and also filed a complaint with the Chief Medical Officer of DOCS. (*Id.*) Kasiem attaches to his complaint a CORC receipt indicating that his grievance, "SUL–18695–09 entitled PA Lied About Medical Disability" was received by CORC on July 16, 2009. (Compl. Ex. D.)

Grievance number SUL–18695–09, filed with IGRC on June 11, 2009, does not, however, concern any actions taken by Switz or Diaz relating to Kasiem's hearing. Instead, that grievance was filed against Switz and two other prison personnel, "Sr. Counselor Karson," and "Sgt. Rivera." (Harben Decl. Ex. E at 2.) It alleged, in essence, that Rivera retaliated against Kasiem for sexual harassment complaints Kasiem made against him by directing Switz to place Kasiem in "medical keeplock"[2] after Kasiem accidentally fell and hurt his knee; that Switz proceeded to place Kasiem in "medical keeplock" without further evaluation; and that Karson then discussed Kasiem's medical condition publically. (*Id.* at 2–3.) The grievance includes nothing whatsoever about Kasiem's hearing loss, his related pain or danger, or Switz's wrongful and retaliatory refusals to treat those conditions. On June 24, 2010, the IGRC found that grievance SUL–19695–09 was "without merit."[3] (*Id.* at 5.) Kasiem appealed that determination to the superintendent and then to CORC.[4] On

---

"Fraudulent Misrepresentation;" "Interference with Access to Medical Treatment;" " 'Medical' Judgment So Bad Its [sic] Not Medical;" and "Retaliatory Reprisals." (Compl. at 3A–3C.)

2. Medical keeplock is "a form of administrative confinement with no actual medical significance." *Jolly v. Coughlin,* 76 F.3d 468, 471 (2d Cir.1996). Apparently, "an inmate on medical keeplock is confined to his cell twenty-four hours per day and is denied telephone privileges, visitation privileges other than from attorneys, out-of-cell exercise, and vocational training." *Major v. Coughlin,* No. 94 CIV. 7572(DLC), 1997 WL 391121, at *1 (S.D.N.Y. July 11, 1997).

3. Stating, *in toto:* "IGRC investigation shows that at no time did the Sergeant show a memo or call the Physician Assistant to have the grievant placed on medical keep lock. The Sergrant has gone on record denying ever talking to anyone about the grievant's medical condition. The staff has gone on record denying the allegations made. Grievance is without merit." (Harben Decl. Ex E. at 5.)

4. The CORC receipt Kasiem attached to his complaint is the same receipt CORC sent Kasiem upon receipt of grievance number SUL–18695–09. (Harben Decl. Ex. E. at 7.)

July 29, 2009, CORC affirmed the denials of Kasiem's grievance, finding, like the IGRC, the grievance "without merit." (*Id.* at 8.)

Between February 13, 2008, and February 8, 2010, Kasiem filed twenty-nine grievances with the IGRC. (*See* Harben Decl. Ex. F at 1–2.) The Court has reviewed the log listing all of Kasiem's grievances during this period, but can find only four that possibly relate to the matters alleged in this case: (1) grievance number 18777, titled "Wants Appointment with Audiologist;" (2) grievance number 18920, titled "P.A. Demonstrating Professional Misconduct;" (3) grievance number 18925, titled "Unlawful Disability Discrimination;" and (4) grievance number 19054, titled "Fraudulent Misrepresentation by Audiologist." (*Id.*) Of those four, only for "P.A. Demonstrating Professional Misconduct" did Kasiem receive a determination from CORC on appeal. (*Id.*) That determination was returned by CORC on January 20, 2010.

## II. DISCUSSION

### A. Converting the Motion

■ On a motion to dismiss, the Court accepts the complaint's allegations as true and draws all reasonable inferences in the plaintiff's favor. *In re DDAVP Direct Purchaser Antitrust Litigation,* 585 F.3d 677, 692 (2d Cir.2009). Where a motion is premised on the plaintiff's failure to exhaust his administrative remedies, the Court considers whether nonexhaustion is clear from the face of the complaint. *See Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (exhaustion is an affirmative defense, so inmates need not specially plead or demonstrate it in their complaints). If nonexhaustion is clear, the motion to dismiss should be granted. *Shaw v. City of New York,* No. 08 Civ. 3997(SHS)(JCF), 2009 WL

1110789, at *3 (S.D.N.Y. Apr. 21, 2009) (quoting *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003)). If it is not, the court may convert the defendant's motion to one for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy,* 255 F.Supp.2d at 251; *see* Fed.R.Civ.P. 12(b).

If the court chooses to convert the motion, it must "afford all parties the opportunity to present supporting material." *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000) (internal quotation marks omitted). The court need not give formal notice of its intention if "the parties were . . . apprised of the likelihood of conversion by less formal or direct means and, in fact, had a sufficient opportunity to present the materials relevant to a summary judgment motion." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. 2004); *see In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir.1985) ("The essential inquiry is whether the [nonmovant] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.").

Here, the defendants claim that Kasiem did not exhaust his remedies before filing this lawsuit. (*See* Def.'s Mem. at 15–19.) Kasiem contends that he filed a grievance covering all claims alleged in this action and that, upon denial, he appealed the grievance to CORC. (Compl. at 4.) But the grievance covered by the CORC receipt attached to the complaint does not relate to the facts or claims alleged in this action. In an abundance of caution, however, the Court will assume that nonexhaustion is

not plain from the face of the complaint and treat defendants' motion as one for summary judgment limited to the issue of exhaustion. Formal notice to the parties is unnecessary here, since defendants attached as exhibits to their motion the records they have of Kasiem's grievances and appeals. (Harben Decl. Exs. E, F.) All parties were on notice of the possibility of conversion; the defendants notified Kasiem that the Court might choose to treat the motion to dismiss as one for summary judgment, and that to oppose it, Kasiem would need to submit evidence, such as affidavits. (Notice to Pro Se Litigant, addressed to Allah Kasiem, dated Mar. 18, 2010, ECF document no. [11].)

## B. Exhaustion

### 1. The Exhaustion Requirement

 The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that prisoners exhaust all available administrative remedies before pursuing a lawsuit in federal court. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (exhaustion is required for "all inmate suits about prison life"); Booth v. Churner, 532 U.S. 731, 734, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (exhaustion required before filing a Section 1983 claim for monetary damages even though monetary damages are unavailable as an administrative remedy). To properly exhaust a claim, a prisoner must comply with state grievance procedures. Jones, 549 U.S. at 218, 127 S.Ct. 910. Merely "[a]lert[ing] the prison officials as to the nature of the wrong for which redress is

sought does not constitute proper exhaustion." Macias v. Zenk, 495 F.3d 37, 44 (2d Cir.2007) (internal quotation marks and citation omitted). An "untimely or procedurally defective" administrative grievance also does not constitute proper exhaustion. Woodford v. Ngo, 548 U.S. 81, 83–84, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

In New York, prisoners must exhaust all levels of the three-tiered grievance procedure: First, the prisoner must file a grievance with the IGRC. 7 N.Y. Comp. Codes R. & Regs. § 701.5(b). Second, the prisoner must appeal an adverse IGRC decision to the facility superintendent. Id. § 701.5(c). And third, the prisoner must appeal an adverse decision by the superintendent to CORC. Id. § 701.5(d). CORC must render a decision within thirty days of receipt of the appeal. Id. § 701.5(d)(3)(ii).

 When a prisoner fails to properly exhaust his administrative remedies before filing suit, the action must be dismissed. See Burgos v. Craig, 307 Fed.Appx. 469, 470 (2d Cir.2008) ("[Exhaustion] must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient."); Neal v. Goord, 267 F.3d 116, 121–22 (2d Cir.2001), abrogated in part on other grounds by Porter, 534 U.S. 516, 122 S.Ct. 983. Likewise, post-exhaustion amendment of pleadings filed originally before exhaustion to reflect that exhaustion has become complete cannot cure the original nonexhaustion defect. Neal, 267 F.3d at 122. Dismissal is without prejudice, and the case may be refiled once the plaintiff has exhausted his remedies. See Brown v. Napoli, 687 F.Supp.2d 295, 298 (W.D.N.Y.2009); Chisholm v. New York City Dep't of Correction, No. 08 Civ. 8795(SAS), 2009 WL 2033085, at *3 (S.D.N.Y. July 13, 2009).

Kasiem has not alleged that he has properly exhausted his administrative rem-

edies for any of the claims he makes in this case. The only fully exhausted grievance in the record seeming to relate, at all, to the events here is grievance number 18920, titled "P.A. Demonstrating Professional Misconduct." (Harben Decl. Ex. F at 2.) That grievance became fully exhausted on January 20, 2010. (*Id.*) But Kasiem filed this suit on October 10, 2009. (Compl. at 7.) Thus, because any grievances possibly covering the claims at issue here either have never been fully exhausted or became exhausted only months after the suit was filed, the Court must dismiss the action for failure to exhaust administrative remedies.

## 2. Exceptions to the Exhaustion Requirement

Although exhaustion of administrative remedies is mandatory under the PLRA, the Second Circuit has recognized that "in some circumstances, the behavior of the defendants may render administrative remedies unavailable." *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Therefore, the Second Circuit has devised three exceptions to the requirement that the plaintiff exhaust administrative remedies. First, "the court must ask whether administrative remedies were in fact 'available' to the prisoner." *Id.* (citing *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004)). This includes both an inquiry into whether "the prison provided grievance procedures that inmates . . . could utilize" and one into whether threats rendered "all administrative remedies unavailable" or "some procedures that would ordinarily be available [to be] effectively unavailable." *Id.* at 686–87. Second, the court should determine whether the defendants forfeited the defense by failing to raise or preserve it and whether the defendants' actions inhibiting the inmate's exhaustion of remedies would estop the defendants from raising the exhaustion defense. *Id.* at 686. Finally, the court "should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" *Id.* (quoting *Giano v. Goord,* 380 F.3d 670, 676 (2d Cir.2004)).[5]

Kasiem makes no argument going to any *Hemphill* exception; but when a plaintiff proceeds *pro se,* the court is "obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). From the facts alleged, however, the Court can construct no winning argument excusing Kasiem's failure to exhaust administrative remedies.

■ Unavailability of administrative remedies under the first Hemphill exception might be actual or "nominal." *Hemp-*

---

**5.** There is some doubt as to whether the *Hemphill* line of analysis has survived *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), and the Second Circuit has yet to decide the issue. *See Macias,* 495 F.3d at 43 n. 1 (declining to decide "what effect *Woodford* has on *Hemphill's* holding that where administrative procedures are confusing 'a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter.'") (quoting *Hemphill,* 380 F.3d at 690); *Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2006) ("We need not determine what effect *Woodford* has on our case law."). In *Woodford,* the Supreme Court held that prisoners must "properly" exhaust administrative remedies, which entails "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90–91, 126 S.Ct. 2378. Courts in this circuit have acknowledged the tension between *Woodford* and *Hemphill,* but have continued to use the *Hemphill* test in the absence of circuit authority to the contrary. *See, e.g., Harrison v. Goord,* No. 07 Civ. 1806(HB), 2009 WL 1605770, at *6 n. 6 (S.D.N.Y. June 9, 2009); *Winston v. Woodward,* No. 05 Civ. 3385(RJS), 2008 WL 2263191, at *6 (S.D.N.Y. May 30, 2008) (applying the three exceptions and collecting district court cases doing the same). This Court will do likewise.

*hill,* 380 F.3d at 687. "The test for assessing the availability of administrative remedies is 'an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available.'" *Harrison v. Goord,* No. 07 Civ. 1806(HB), 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009). When, however, "the record reflects that [plaintiff] continued to file grievance after grievance during the [ ] period" of alleged unavailability, "it is apparent that a reasonable person of ordinary firmness in [plaintiffs] position, as well as [plaintiff] himself, would not have thought that administrative remedies were unavailable, and [plaintiff] has not satisfied the first prong of the *Hemphill* analysis." *Id.; see also Amador v. Superintendents of Dep't of Correctional Servs.,* No. 03 Civ. 0650(KTD), 2007 WL 4326747, at *8 (S.D.N.Y. Dec. 4, 2007) ("[T]he fact that three of the Plaintiffs filed formal grievances directly cuts against Plaintiffs' argument that the process is unavailable . . . ."). Here Kasiem filed no fewer than twenty-nine grievances between February of 2008 and February of 2010, fully exhausting thirteen. (Harben Decl. Ex. F. at 1–2.) Thus Kasiem cannot reasonably argue that administrative remedies and procedures were unavailable to him.

█ Defendants are also not estopped from asserting an exhaustion defense. Estoppel is found where "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible." *Winston v. Woodward,* No. 05 Civ. 3385(RJS), 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (quoting *Carini v. Austin,* No. 06 Civ. 5652(NRB), 2008 WL 151555, at *3 (S.D.N.Y. Jan. 14, 2008)). An inmate could glean this understanding from prison officials' threats, beatings, or denials of grievance forms, or by other misconduct deterring him from fulfilling the requisite

procedure. *Hemphill,* 380 F.3d at 688. Here, Kasiem has alleged that defendant Switz found "nothing wrong with his hearing as a retaliatory reprisal" in response to Kasiem's previous grievance complaint against her. (Compl. at 3.) Even if this allegation were of the sort that could estop defendants from asserting the nonexhaustion defense, however, it cannot be said that Kasiem reasonably understood that pursuing his grievances would be futile. Kasiem actually did pursue grievances and appeals throughout the time period in question, defeating any inference from his allegations that he reasonably understood the grievance process to be futile. *See McCullough v. Burroughs,* No. 04–CV–3216 FB, 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005) (estoppel requires "reasonable reliance" and "detriment"); *see also Berry v. City of New York,* No. 00 CIV. 2834(RMB)(JCF), 2002 WL 31045943, at *8 (S.D.N.Y. June 11, 2002) ("[T]he fact that the plaintiff actually did file several grievances and was successful in at least one case belies the notion that this statement led him to believe that the filing of a grievance was impossible or futile.") (internal quotation marks and alterations omitted).

█ The third *Hemphill* exception is also unavailing. In the Second Circuit, "special circumstances" may exist, even though administrative remedies are available and the defendants are not stopped, that nevertheless justify the plaintiff's failure to comply with administrative procedural requirements. *Hemphill,* 380 F.3d at 689. Here, however, Kasiem has not alleged any special circumstances, such as a reasonable misunderstanding of the grievance procedure, that would justify his failure to exhaust administrative remedies. Indeed, Kasiem has shown that he is capable of following the correct grievance procedure, since he has pursued at least thir-

teen of his grievances to full exhaustion since February of 2008.

### 3. Dismissal Due to Nonexhaustion is Without Prejudice

In cases involving nonexhausted claims, such as this one, the law is "clear that the appropriate disposition of nonexhausted claims is dismissal without prejudice." *Mitchell v. Dep't of Correction,* No. 05 Civ. 5792(JSR)(HBP), 2008 WL 744041, at *6 (S.D.N.Y. Feb. 20, 2008); *Doe v. Goord,* No. 04 Civ. 0570(GBD)(AJP), 2004 WL 2829876, at *8 (S.D.N.Y. Dec. 10, 2004) ("Dismissal of an action for failure to exhaust administrative remedies ordinarily is without prejudice."). This is so even when the issue is decided on a motion for summary judgment. *See Amador,* 2007 WL 4326747, at *8 ("I grant the Supervisory Defendants summary judgment as to the issue of exhaustion and these Plaintiffs' claims for injunctive and declaratory relief are hereby dismissed without prejudice."); *see also McCoy,* 255 F.Supp.2d 233 (converting motion to dismiss to one for summary judgment and dismissing without prejudice). Such a remedy is appropriate because "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw." *Acosta v. Corrections Officer Dawkins,* No. 04 Civ. 6678(RMB), 2005 WL 1668627, at *4 n. 6 (S.D.N.Y. July 14, 2005) (quoting *Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2003)). "If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit.... In such circumstances ... dismissal without prejudice is appropriate." *Id.* Here, therefore, the appropriate disposition is to dismiss Kasiem's suit without prejudice to allow him an opportunity to refile after having exhausted his administrative remedies.

### III. CONCLUSION

For the reasons stated above, defendants' converted motion for summary judgment [8] is GRANTED. This dismissal is without prejudice—in the event that the plaintiff has exhausted or does exhaust his administrative remedies fully, he may refile his complaint and reinstitute his suit. The Clerk of the Court is directed to close this motion and close this case.

SO ORDERED